|  |  |  |
|---|---|---|
| YADRAM SHIWBODH, | : | |
| | : | |
| plaintiff, | : | |
| | : | |
| v. | : | CASE NO. 3:18-cv-02059(RAR) |
| | : | |
| ANDREW SAUL,[1] | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| defendant. | : | |

## RULING ON PENDING MOTIONS

Yadram Shiwbodh ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405(g).  The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated October 17, 2018.  Plaintiff timely appealed to this court.  Currently pending are plaintiff's motion for an order reversing and remanding his case for a hearing (Dkt. #15-1) and the defendant's motion to affirm the decision of the Commissioner.  (Dkt. #18-1.)

For the reasons that follow, the plaintiff's motion to reverse, or in the alternative, remand is DENIED and the Commissioner's motion to affirm is GRANTED.

---

[1] Andrew Saul is the new Commissioner of Social Security and has been added as a party automatically.

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." <u>Williams</u>, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled within the meaning of the SSA, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.[2]

---

[2] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the

In order to be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[3]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II on October 19, 2015. (R. 210.)[4] Plaintiff alleged a disability onset date of March 9, 2015. (R. 85.) At the time of application, plaintiff alleged that he suffered from generalized osteoarthritis multiple sites, tenosynovitis, spinal enthesopathy, cervicalgia, and tendinitis or bursitis. (R. 85.) The initial application was denied on January 22, 2016, and

---

Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[3] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[4] The Court cites pages within the administrative record as "R. ___."

again upon reconsideration on April 25, 2016. (R. 85–95, 96–112.) Plaintiff then filed for an administrative hearing which was held by ALJ Alexander Borré (hereinafter the "ALJ") on September 21, 2017. (R. 42–84.) The ALJ issued an unfavorable decision on November 17, 2017. (R. 7–26.) On December 18, 2017, plaintiff sought a review by the Appeals Council, which was denied on October 17, 2018. (R. 1–4.) Plaintiff then filed this action seeking judicial review. (Dkt. #15–1.)

## DISCUSSION

Plaintiff asserts that the ALJ misstated the record; violated the treating physician rule by assigning little weight to the opinion of Dr. Martin; failed to properly consider all of plaintiff's medically determinable impairments in the ALJ's RFC determination; and erroneously found that plaintiff was not disabled at step five of the ALJ's analysis. (Pl. Br. 7, 15, 19 24.) Based on the following, the Court finds that the ALJ's opinion was based on substantial evidence, the ALJ did not violate the treating physician rule, and the ALJ did not err at step five. The Court thus affirms the ALJ's opinion.

## I. The ALJ Did Not Misstate the Record

Plaintiff asserts that the ALJ misstated the record by stating that plaintiff had not consistently reported back, shoulder, and knee pain and therefore the ALJ's determination is not supported by substantial evidence. Plaintiff further

asserts that the record supports further limitations due to the pain plaintiff alleges. (Pl. Br. 9-15.) The Court disagrees.

When an individual's impairment does not meet or equal a listed impairment, the ALJ will "make a finding [of the individual's] residual functional capacity based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. § 404.1520(e). An individual's residual functional capacity ("RFC") is the most an individual can still do despite his or her limitations. 20 C.F.R. § 404.1545(a)(1). Plaintiff has the burden of establishing a diminished RFC. See Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004).

"The regulations provide a two-step process for evaluating a claimant's assertions of pain and other limitations. At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2011) (citing 20 C.F.R. § 404.1529(b)). "If the claimant does suffer from such an impairment, at the second step, the ALJ must consider 'the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence' of record." Genier, 606 F.3d at 49 (alterations in original) (quoting 20 C.F.R. § 404.1529(b)).

"In determining whether [an individual is] disabled, [the ALJ will] consider all [of an individual's] symptoms, including pain, and the extent to which [his or her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c). While statements of pain are insufficient, an ALJ may not reject statements of intensity and persistence of pain or other symptoms affecting an individual's ability to work because of a lack of substantiating medical evidence. Id. at § 404.1529(c)(2).

At step one, the ALJ determined that plaintiff suffered from the following medically determinable impairments, degenerative disc disease of the lumbar spine, osteoarthritis of the bilateral knees, and right shoulder osteoarthritis, all of which could have been expected to produce plaintiff's symptoms. (R. 13.) The ALJ further found that these impairments more than minimally interfered with plaintiff's ability to perform basic work activities and therefore were severe. (R. 13.)

At step two, the ALJ determined that plaintiff's assertions of pain were inconsistent with the record because plaintiff did not consistently complain of knee pain and the medical evidence did not substantiate plaintiff's claims. (R. 16.) Plaintiff asserts that the record demonstrates that he consistently complained of knee, back, and shoulder pain, and that the

medical evidence supports his assertions of intensity and persistence of pain. (Pl. Br. 9–15.)

The ALJ found that plaintiff had not consistently complained of pain. The ALJ determined that plaintiff more often complained of back and shoulder pain rather than knee pain. The record adequately reflects that plaintiff complained of knee pain less often than he complained of shoulder and back pain and that from June 2012 to April 2013, plaintiff's knee pain was reported as under control. (R. 425–428, 435.) While plaintiff consistently complained of knee pain from April 15, 2014 until August 4, 2015, plaintiff's reports were minimal during the relevant period and occurred most often when plaintiff was still working. (R. 323, 324, 385, 424, 441, 839–40, 842–43, 854, 860, 786–87, 834–35.)

Since August 2011, plaintiff has consistently complained of shoulder and back pain. See (R. 317, 321, 324, 385, 424–28, 430–32, 435–36, 441, 444, 452–54, 469, 786–87, 789, 834–35, 839–40, 842–43, 860.) However, the record demonstrates that plaintiff achieved some relief with medication. Plaintiff repeatedly sought treatment for pain while on medication, but plaintiff frequently denied the recommended treatment. (R. 317, 320, 324, 426, 436.)

The ALJ noted that plaintiff's shoulder and knee were repeatedly assessed as good with a normal range of motion and

strength.  (R. 319, 425, 426, 431, 432, 438, 439, 854, 856.)
MRIs of plaintiff's back demonstrated a small lateral left disc
protrusion at L4-L5 and normal vertebra.  (R. 385, 798.)
However, plaintiff asserts that the ALJ's analysis of the
medical record is invalid because plaintiff's pain was due to
fibromyalgia and is not traceable with an MRI.  (Pl. Br. 14-15.)

Consistent with the medical evidence, the ALJ determined
that the objective medical evidence does not support the alleged
persistence of pain and level of intensity.  While this is
insufficient to discount plaintiff's claims, the ALJ determined
that plaintiff's activities of daily living further demonstrated
that plaintiff has greater functional abilities that he claims.
20 C.F.R. § 416.929(c)(2).

Plaintiff testified that he is in such constant pain that
his daughter is left to clean the house, cook, and run errands
in order to care for plaintiff and his wife.  (R. 60-62.)
Plaintiff also testified that he must lay down and often nap for
hours to feel relief.  (R. 66.)  However, as the ALJ noted,
plaintiff is capable of dressing himself, driving short
distances, and going for short walks twice a week.

Plaintiff's pain stems from an injury that occurred during
a 2011 plane crash.  As the ALJ noted, the majority of
plaintiff's complaints of pain occurred over a four-year period
of time in which plaintiff continued working.  (R. 17.)

However, plaintiff did not present substantial evidence that his condition worsened from 2011 to 2015, the alleged onset date and time when plaintiff finally stopped working.

Plaintiff has failed to show that the ALJ's evidence in support of his determination is insufficient for "a reasonable mind [to] accept as adequate to support a conclusion" that plaintiff was not precluded from participating in any substantially gainful activity.  <u>Williams on Behalf of Williams v. Bowen</u>, 859 F.2d 255, 258 (2d Cir. 1988).  Plaintiff has thus failed to show that the ALJ's decision was not supported by substantial evidence.  The Court therefore finds that the ALJ's opinion is supported by substantial evidence.

## II. The ALJ Did Not Violate the Treating Physician Rule

Plaintiff asserts that the ALJ violated the treating physician rule by failing to accord Dr. Martin's opinion controlling weight as he was the only treating physician to provide an opinion regarding the plaintiff's functional limitations.  (Pl. Br. 15.)  The Court disagrees.

The medical opinions of treating physicians are generally given more weight than other evidence.  The treating physician rule stipulates that "the opinion of a [plaintiff's] treating physician as to the nature and severity of the impairment is given 'controlling weight' as long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)); see also Mariani v. Colvin, 567 F. App'x 8, 10 (2d Cir. 2014) ("A treating physician's opinion need not be given controlling weight where it is not well-supported or is not consistent with the opinions of other medical experts" where those other opinions amount to "substantial evidence to undermine the opinion of the treating physician").

"The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." Schrack v. Astrue, 608 F. Supp. 2d 297, 301 (D. Conn. 2009) (citing Schupp v. Barnhart, No. Civ. 3:02-CV-103(WWE), 2004 WL 1660579, at *9 (D. Conn. Mar. 12, 2004)). It is "within the province of the ALJ to credit portions of a treating physician's report while declining to accept other portions of the same report, where the record contain[s] conflicting opinions on the same medical condition." Pavia v. Colvin, No. 6:14-cv-06379 (MAT), 2015 WL 4644537, at *4 (W.D.N.Y. Aug. 4, 2015) (citing Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002)).

In determining the amount of weight to give to a medical opinion, the ALJ considers the examining relationship, the treatment relationship, the length of treatment, the nature and extent of treatment, evidence in support of the medical opinion, consistency with the record, specialty in the medical field, and any other relevant factors. 20 C.F.R. § 404.1527. It is generally appropriate to "give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 416.927(c)(5).

After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015)(citing Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008))(alteration in original). The ALJ may not simply substitute his own judgment for that of the treating physician, and failure to provide good reasons for the weight given to a treating physician's opinion is grounds for remand. Id.

"SSA regulations provide a very specific process for evaluating a treating physician's opinion" and failure to "explicitly consider" any of the named factors is grounds for rejecting the ALJ's decision. Greek, 802 F.3d 370, 376 (2d Cir. 2015) (emphasis added). However, an ALJ is not required to

12

explicitly cite to the treating physician rule or its factors.
Crowell v. Comm'r of SSA, 705 Fed. Appx. 34, 35 (2d Cir. 2017).
It is sufficient that the ALJ substantively reference the rule
and provide good reason for not assigning a plaintiff's treating
physician controlling weight.  Id.

The ALJ assigned Dr. Martin's opinion little weight.  (R.
17–18.)  The ALJ stated that Dr. Martin's opinion was overly
restrictive and inconsistent with the record.  (R. 18.)  The ALJ
referenced the treating physician rule substantively, rather
than explicitly.  The ALJ noted the consistency of Dr. Martin's
opinion with the record and the evidence refuting Dr. Martin's
opinion.  (R. 18.)

Dr. Martin opined very extreme limitations that far
exceeded plaintiff's own testimony as to his capabilities.  (R.
576.)  Dr. Martin opined that plaintiff could never, *inter alia*,
climb, crawl, kneel, lift, pull, push, reach above the shoulder,
reach forward, carry, bend, twist, grasp with his hands,
manipulate his fingers, sit, stand, stoop, walk, lift anything
above one pound, or be exposed to heat, cold, dampness, noise,
or dust.  (R. 576.)  Dr. Martin selected the most restrictive
option for every category.  (R. 576.)

As the ALJ noted, Dr. Martin failed to provide any support
for such extreme limitations and even plaintiff stated that he
is capable of reaching overhead, sitting for twenty minutes,

standing for fifteen minutes, walking for 30 minutes, and lifting and carrying up to ten pounds.  (R. 18, 54, 59, 64, 65.) Further, no other physician opined such extreme limitations. (R. 90–92, 105–107, 333–335.)

The ALJ thus provided good reason for determining that Dr. Martin's opinion was not entitled to controlling weight.  As such, the ALJ did not violate the treating physician rule by according Dr. Martin's opinion little weight and affording greater weight to state agency physicians and the consulting examiner.

### III. The ALJ Properly Considered Plaintiff's Severe and Non-Severe Medically Determinable Impairments

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly consider plaintiff's severe and nonsevere impairments. (Pl. Br. 19.)  Plaintiff asserts that the ALJ should have determined that he required a sit/stand/walk option, use of a cane for walking, was unable to use his right arm, and an inability to remain on task.  (Pl. Br. 20, 21.)  The Court disagrees.

As already noted by the Court, the ALJ's RFC determinations regarding plaintiff's ability to sit, stand, walk, and use his right arm are supported by substantial evidence.  The ALJ properly determined that plaintiff's asserted limitations based

on his pain were not consistent with the medical evidence and his activities of daily living.

Plaintiff is incorrect that the ALJ should have further limited his ability to walk and stand because of his required use of a cane. As the ALJ noted, plaintiff was not prescribed a cane and his physician merely stated that it was permissible to use the cane. (R. 17.) As previously noted, the ALJ further stated that plaintiff's knee and gait were repeatedly assessed as normal. (R. 16, 319, 334, 425, 438, 439, 854, 856.) Consultative examiner, Dr. Reiher, also opined that plaintiff's use of a cane was not necessary. (R. 335.) Similarly, plaintiff presents absolutely no evidence other than his testimony that demonstrates he requires the use of a cane. As such, the ALJ's determination that plaintiff did not require a cane is supported by substantial evidence.

Plaintiff further asserts that the ALJ should have found that his emotional and pain factors affected his ability to focus and therefore he would be unable to remain on task for a complete workday. Since the Court has already determined that the ALJ's analysis of plaintiff's pain was supported by substantial evidence, the Court will not readdress this issue.

Plaintiff further asserts that he suffers from PTSD or generalized anxiety disorder from his plane crash and this limits his ability to remain on task. Plaintiff does not assert

the extent to which his ability to remain on task is limited, only that if it was greater than ten percent, he could not perform any substantially gainful activity. (Pl. Br. 22.)

Plaintiff relies on the assessment of Dr. Harris as support for his assertion. However, Dr. Harris' opinion does not support greater functional limitations than determined by the ALJ. While Dr. Harris opined that plaintiff had concentration and persistence limitations, Dr. Harris opined that plaintiff was only moderately limited in his ability to maintain attention and concentration for extended periods of time. (R. 107.) Further, Dr. Leib opined that plaintiff did not have any medically determinable mental impairments. (R. 90.) Dr. Martinez reported that while plaintiff has difficulty concentrating, his attention span is within normal limits. (R. 355.) The ALJ also noted that plaintiff did not receive any mental health treatment during the relevant period. (R. 19.)

Plaintiff has failed to show that the evidence in support of the ALJ's determination is insufficient for "a reasonable mind [to] accept as adequate to support a conclusion" that plaintiff was not precluded from participating in any substantially gainful activity due to off task behavior. Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). Plaintiff has thus failed to show that the ALJ's decision was not supported by substantial evidence. The Court

therefore finds that the ALJ's opinion is supported by substantial evidence.

## IV.  The ALJ's Determination at Step Five Is Supported by Substantial Evidence

Plaintiff asserts that the ALJ erroneously found that plaintiff was not disabled at step five by determining that a substantial number of jobs exist in the national economy that plaintiff could perform.  (Pl. Br. 24.)  Plaintiff asserts that the ALJ erred because he relied on the testimony of the vocational expert, Mr. Hall.  (Pl. Br. 24.)  Plaintiff asserts that Mr. Hall's testimony was not supported by substantial evidence because Mr. Hall did not account for the discrepancies between his testimony and the Dictionary of Occupational Titles ("DOT").  The Court disagrees.

At step five, the ALJ examines if the plaintiff can adjust to other work considering the plaintiff's residual functional capacity ("RFC"), past relevant work, age, and work experience. 20 C.F.R. 404.1520(a)(4)(v).  "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014).  "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based

his opinion, . . . and accurately reflect the limitations and capabilities of the claimant involved." Id. (internal quotation marks and citations omitted).

At step five, the Commissioner must determine whether significant numbers of jobs exist in the national economy that the plaintiff can perform. See 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). "An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved." Id. (internal citations omitted) (alterations in original) (quoting Dumas v. Schweiker, 712 F.2d 1545, 1553-54 (2d Cir. 1983)) (citing Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981)).

The ALJ does not err by relying on the vocational expert's testimony where there is no apparent conflict between the vocational expert's testimony and the Dictionary of Occupational Titles. Diaz v. Saul, No. 3:19-CV-00272 (WIG), 2019 WL 5587024, at *3 (D. Conn. Oct. 30, 2019) (citing Gusch v. Comm'r of Soc. Sec., No. 18-CV-0346SR, 2019 WL 4140940, at *4 (W.D.N.Y. Aug.

30, 2019); <u>Pahl v. Colvin</u>, No. 12-CV-316S, 2013 WL 3761545, at
*6 (W.D.N.Y. July 16, 2013); <u>Wellington v. Astrue</u>, No. 12 CIV.
3523 KBF, 2013 WL 1944472, at *4 (S.D.N.Y. May 9, 2013)).  Thus,
where an apparent conflict exists, the ALJ does not err by
relying on the testimony of a vocational expert who bases his or
her opinion on his or her professional experience.  <u>Diaz</u>, 2019
WL 5587024, at *3.

At the hearing before the ALJ, Mr. Hall testified that a
hypothetical individual with limitations identical to the RFC
determination could perform the following jobs: mail sorter,
order caller, and parts cleaner.  (R. 77.)  Plaintiff asserts
that he is unable to perform these positions because they all
require overhead reaching.  (Pl. Br. 24.)  However, at the
hearing, Mr. Hall addressed the apparent discrepancy between his
testimony and the requirements of the position as listed in the
DOT.  (R. 77.)

Mr. Hall testified that while the DOT does not address
overhead reaching, he believed that plaintiff could perform
these jobs based on his professional experience.  (R. 77.)  Mr.
Hall further testified that he had seen the jobs performed and
believed plaintiff could perform them despite a limitation
prohibiting any overhead reaching with his right arm.  (R. 78.)
However, this would limit the number of jobs to roughly half of
those available in the national economy.  (R. 78.)

There is no apparent conflict between Mr. Hall's testimony and the DOT. The DOT does not address overhead reaching and plaintiff was not limited from performing all reaching. (R. 14.) The ALJ determined that plaintiff had no reaching limitations with his left arm and was limited to occasional reaching in all directions and no overhead reaching with his right arm. (R. 14.) As the DOT does not address these specific limitations, there is no apparent conflict between the DOT and Mr. Hall's testimony. Therefore, the ALJ did not err by relying on Mr. Hall's testimony.

## CONCLUSION

Based on the foregoing reasons, plaintiff's motion for an order to remand the Commissioner's decision (Dkt. #15-1) is DENIED and the Commissioner's motion to affirm that decision (Dkt. #18-1) is GRANTED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

SO ORDERED this 23rd day of March 2020, at Hartford, Connecticut.

_____/s/___ ___ _____

Robert A. Richardson
United States Magistrate Judge